IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVE SPENCER, | § | |
| CID #903485, | § | |
|     PETITIONER, | § | |
| | § | |
| V. | § | NO. 3:02-CV-1988-D |
| | § | |
| DOUGLAS DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
|     RESPONDENT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject

cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions,

and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A.  Nature of the Case:**  This is a petition for writ of habeas corpus by a state prisoner under

28 U.S.C. § 2254.

**B.  Parties:**   Petitioner Dave Spencer is an inmate currently incarcerated in the Texas

Department of Criminal Justice, Correctional Institutions Division.  Respondent Douglas Dretke is

the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

**C. Factual and Procedural History:**  The state court of appeals thoroughly detailed the facts

of the offense as follows:

On May 23, 1998 at approximately 1:00 a.m., Gerald Dewayne Durden was
fatally shot while standing in front of the Start Deli, located at the corners of
Pennsylvania and Holmes in South Dallas, and across the street from Ruffin's
Chicken House (Ruffin's) [a pool hall].  Durden died from one gunshot wound to the

back of the upper neck, and was found lying face up on the sidewalk. When police arrived nearly one hour later, there were about twenty people milling around, but no one was near the body.

Dallas homicide detective William Carollo testified he interviewed Jennie Law Johnson approximately five hours after the shooting. Johnson was deceased at the time of the trial. Carollo testified Johnson identified Bridgette Allen and Ricky Don Gates as two people she saw talking to the man who shot Durden. Johnson overheard them arguing about car keys. Johnson told Carollo the man she saw shoot Durden was chubby, had short black hair, and stood about five feet ten inches tall. Johnson did not pick out a photograph of [Spencer] from a six-photo lineup six weeks after the shooting. Carollo testified the photo lineup shown to Johnson contained a photograph of [Spencer] taken in 1986, twelve years earlier, because it was the only one available to police at that time. Johnson told Carollo she had been "smoking and drinking all day" with a friend named "Cincinnati."

James Carrathers testified he was known by the name "Cincinnati," he was with Johnson all day on May 23, 1998, "getting high and partying," and he knew Durden only by the name "Shorty." As Carrathers and Johnson stood outside Ruffin's, he heard Bridgette Allen tell Durden to leave the area because "the dude said he going [sic] to kill him when he come back." Carrathers saw Durden walk across the street. When Durden was in front of the Star Deli, Carrathers saw a man wearing a hood run toward Durden, swing at Durden as if to strike him, and then shoot Durden in the back of the head as Durden turned to walk away. Carrathers testified he could not see the face of the man who shot Durden. After Durden fell face down on the ground, Carrathers saw four men "go through his pockets" and "frisk him." Carrathers was unable to identify the shooter from a six-photo lineup that contained [Spencer's] photograph. Carrathers further testified he was serving a sentence for previous felony convictions.

Beverly Allen, [Spencer's] girlfriend at the time of the shooting, testified she did not see the shooting because she was inside Ruffin's. When she came outside, she saw Durden lying on the ground in front of the Star Deli, located across the street from Ruffin's, and saw several young men going through Durden's pockets. Allen admitted she gave three different written statements to police. In her first statement, dated June 16, 1998, Allen told police she was watching Durden gamble with others in front of the Star Deli. A man named "Dwight" went to Ruffin's and told [Spencer] Durden was saying bad things about him. [Spencer] asked Dwight for his gun, and [Spencer] and Dwight walked to Dwight's truck and got a revolver hidden under cans in the back of the truck. [Spencer] walked to where Durden was standing and asked Durden what he was saying. Durden said something to [Spencer] and turned to walk away. [Spencer] pulled a gun from his waistband and shot Durden in the back of the head. [Spencer] then ran from the scene. Later that morning, [Spencer] told Allen

2

he shot Durden because Durden "kept talking trash about him."

In her second statement, dated February 12, 1999, Allen stated she and her sister were inside Ruffin's, heard a gunshot, then ran outside. They saw Durden lying on the sidewalk across the street, but did not see [Spencer] around the area. Later, Allen telephoned [Spencer]. [Spencer] asked Allen if "the homeboy" was dead. Allen told [Spencer] Durden was dead; [Spencer] told Allen he "had to do it." During the trial, Allen testified she told police she had seen [Spencer] shoot Durden only because she was frustrated about being arrested and did not really see who shot Durden. Allen also denied writing a letter addressed to "Judge King" in which [she] stated she was afraid to tell what she knew because [Spencer's] cousin could "get her." Allen admitted she was in jail when the letter was written, but testified her cellmate wrote out the letter and she (Allen) merely signed it.

In her third statement, dated September 20, 1999, Allen stated she and her sister were at Ruffin's with [Spencer] and Ricky Don Gates when [Spencer] and Durden got into a "squabble" about Durden selling "fake dope." Gates stopped the argument. One hour later, Durden returned on the scene telling people he was going to shoot [Spencer]. Some of the people told [Spencer] what Durden was saying. Allen went inside Ruffin's and did not know what happened next. When she went outside again, Durden was lying on the ground dead. Allen's statement further alleged she lied to police in her June 16, 1998 statement because she was afraid she was going to jail.

Bridgette Allen testified she and her sister were inside Ruffin's playing pool and gambling with friends, but [Spencer] was not with them. When she heard a gunshot, she waited several minutes before going outside. Bridgette admitted she gave police a written statement that said her boyfriend, Gates, was inside the club with her, although she actually did not know whether he was inside the club or not. Bridgette further testified she was on probation after a conviction for possession with intent to deliver a controlled substance.

Ricky Don Gates testified he was one-half block away at an apartment when the shooting occurred. He was drinking alcohol and talking to several other men when they heard a gunshot. He knew Bridgette was in Ruffin's, so he ran to the area to see what had happened. Gates saw Durden lying on the ground across the street from Ruffin's. Gates saw both Beverly and Bridgette Allen inside Ruffin's. Gates did not see [Spencer] in the area. Gates went to a pay phone and called for an ambulance. Gates admitted he gave police a written statement that day, but denied he told police he was at a nearby motel smoking crack and returned to Ruffin's at about 1:00 a.m. Gates further testified he had prior convictions for possession of a controlled substance.

3

> Two witnesses testified they were in jail with [Spencer] and heard him say he killed Durden. Edmond Washington testified [Spencer] told him he shot a man in the head with a .357 Magnum handgun because "he was tired of the dude messing with him and he kept telling the dude to leave him alone, but he had to do what he had to do." Washington further testified he was serving a life sentence for capital murder. Marcel Daniel testified he overheard [Spencer] telling others he shot someone in the head, and when [Spencer] turned him over to get the money, the man had a hole in the back of the head. Daniel overheard [Spencer] say he shot the man with a ".357" in a parking lot. Daniel further testified he overheard [Spencer] say he was worried about a person who was with him during the shooting turning him in and testifying for the State.

*Spencer v. State*, No. 5-99-1916-CR, 2000 WL 1804703, at *1-2 (Tex. App.—Dallas Dec. 11, 2000, no pet.) (not designated for publication).

A jury found Spencer guilty of murder, and the trial court assessed his punishment at 75 years' confinement. (2 State Habeas R. at 51.) The Dallas Court of Appeals affirmed the trial court's judgment, and Spencer did not file a petition for discretionary review with the Texas Court of Criminal Appeals. *Id.* Spencer filed a state application for habeas corpus relief challenging his conviction, which the Court of Criminal Appeals denied without written order on the findings of the trial court. *Ex parte Spencer*, No. 52,110-02 (Tex. Crim. App. June 26, 2002) (not designated for publication).[1] Spencer filed his federal petition for writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division, on August 28, 2002. *See* RULES GOVERNING SECTION 2254 CASES 3(d) (mandating timeliness determined by date petition placed in institution's internal mailing system); *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam) (holding, under prison mailbox rule, pro se habeas petition filed when papers delivered to

---

[1]Spencer's first original proceeding was a motion for leave to file an application for writ of mandamus attacking the trial court's failure to rule on his habeas corpus application. The Court of Criminal Appeals denied the motion on the same day it denied his habeas application. *In re Spencer*, No. 52,110-01 (Tex. Crim. App. June 26, 2002) (not designated for publication).

prison authorities for mailing).

**D.  Issues:**  Spencer argues that (1) the evidence is legally and factually insufficient to support his conviction and (2) trial counsel was constitutionally ineffective.

**E. Exhaustion:**  Dretke believes Spencer has sufficiently exhausted available state remedies on all issues presented and, thus, does not move for dismissal on this ground.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant has the burden of rebutting this presumption of correctness

5

by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### III. SUFFICIENCY OF THE EVIDENCE

Spencer argues that the evidence is legally and factually[2] insufficient to support his conviction based on the unreliability of witness testimony. (Federal Pet. at 7, 7A-7C; Pet'r Resp. at 2.)

On appeal, the intermediate appellate court found that the evidence was legally sufficient to support his conviction. *Spencer*, 2000 WL 1804703, at *3. Spencer also raised his legal-insufficiency challenge in his state habeas corpus application. (2 State Habeas R. at 7-10.) In its response to Spencer's application, the State asserted that the claim was procedurally barred because it had been raised and rejected on direct appeal. (*Id.* at 31-32.) *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *Ex parte Sepulveda*, 172 Tex. Crim. 455, 358 S.W.2d 630, 630 (1962). The state trial court made no express ruling on Spencer's application; instead, it was forwarded to the Court of Criminal Appeals with an implied finding that there were no controverted, previously unresolved facts material to the legality of Spencer's confinement. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 3(c) (Vernon Supp. 2004-05). The Court of Criminal Appeals denied the application without written order.

Although the Court of Criminal Appeals stated no reasons when it denied habeas relief, that

---

[2]This Court will not address Spencer's factual-insufficiency arguments because they are not cognizable on federal habeas review. *Fox v. Johnson*, No. 4:00-CV-291-Y, 2001 WL 432247, at *2 (N.D. Tex. Apr. 20, 2001), *adopted*, 2001 WL 540215 (N.D. Tex. May 17, 2001).

court has long held that the sufficiency of the evidence may only be raised on direct appeal and may not be raised in a state habeas proceeding. *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). Indeed, the Court of Criminal Appeals recently reaffirmed that where a state habeas applicant challenges the sufficiency of the evidence in a state habeas application and the court subsequently disposes of the application by entering a denial without written order, the applicant's sufficiency claim was denied because it was not cognizable. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Thus, this procedural default in the state courts procedurally bars this Court from addressing the merits of Spencer's sufficiency claim.[3] *Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Spencer asserts that trial counsel was constitutionally ineffective when he did not object to or otherwise prevent the admission of Beverly Allen's three prior inconsistent statements. (Federal Pet. at 7, 7G-7O; Pet'r Resp. at 2-4.) Spencer also argues that the totality of counsel's representation resulted in a violation of the Sixth Amendment right to effective assistance of counsel. (*Id.* at 8-8A.) The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A claim of ineffective assistance of counsel is measured under a two-pronged standard by which a petitioner must show (1) that counsel's performance was deficient in that the

---

[3]Even if this claim were not barred, Spencer would not be entitled to relief. The crux of his claim is that the fact-finder declined to resolve the fact issues and the credibility of the State's witnesses in his favor. This is inadequate to establish that the evidence was legally insufficient. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000). Further, the state court of appeals' conclusion did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d); *Spencer*, 2000 WL 1804703, at *3; *e.g., Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and (2) prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697.

In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.* at 689. In general, scrutiny of an attorney's performance is highly deferential, and reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. *Id.* at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690-91.

Spencer's complaints about counsel were reviewed and rejected during state collateral review proceedings. (2 State Habeas R. at 14-24, 30-31.) A claim of ineffective assistance is a mixed question of law and fact. *Id.* at 698. Thus, a federal habeas court cannot grant relief unless the state court's rejection of the claim involved an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d).

Spencer cannot meet the prejudice requirement of the *Strickland* test. As recited above in section I.C., the evidence establishes Spencer's guilt; thus, he cannot show that the result of the trial would have been different had counsel acted differently. *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir.

1998), *cert. denied*, 526 U.S. 1148 (1999). Further, Spencer has failed to carry his burden of proof on his claims. Both the state trial court and the Texas Court of Criminal Appeals considered and rejected Spencer's ineffective assistance claims. An independent review of his claims in conjunction with the state court records does not indicate that the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or that it was based on an unreasonable determination of the facts as presented in the state court proceedings. 28 U.S.C. § 2254(d), (e)(1). Finally, as demonstrated below, Spencer's arguments fall short of satisfying the deficient-performance element of *Strickland*, i.e., that counsel's alleged errors were so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment.

A. **Admission of Allen's Three Statements**

Spencer first argues that counsel should have prevented admission of Allen's three prior inconsistent statements because the proper foundation to admit them was not laid and because calling Allen as a witness was simply a pretext by the State to admit the statements, in which Allen affirmed that Spencer told her he had shot Durden. Tex. R. Evid. 613(a). (4 R.R. at State Exs. 25-27.) At trial, Allen testified that she was in the bathroom at Ruffin's when the shooting occurred and that she did not know who shot Durden. (3 R.R. at 83-90.) She was shown the statements, but either denied making them at all or disavowed integral parts of the statements. (*Id.* at 93-116.) Under Texas law, the proper predicate was laid for admission of the prior statements; thus, counsel had no basis on which to object. *Id.*; *Irizarry v. State*, 916 S.W.2d 612, 616 (Tex. App.—San Antonio 1996, pet. ref'd). Further, because Allen was a witness to the events surrounding the murder, she was an important fact witness and there is no showing that calling her as a witness was a mere pretext. Counsel was not deficient. *See Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) (holding

9

counsel not deficient for failing to request competency hearing where there was no indication of incompetency), *cert. denied*, 523 U.S. 1099 (1998); *Lauti v. Johnson*, 102 F.3d 166, 170 (5th Cir. 1996) (holding counsel not deficient for failing to object to proper jury instruction), *cert. denied*, 521 U.S. 1126 (1997); *Marshall v. Cabana*, 835 F.2d 1101, 1103 (5th Cir. 1988) (per curiam) (holding counsel not deficient for failing to make meritless argument).

## B.   Cumulative Effect of Representation

Spencer argues that the cumulative effect of trial counsel's representation, specifically his lack of a firm command of the facts of the case, resulted in *Strickland* prejudice and, thus, violated the Sixth Amendment.  Habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law, (2) the errors were not procedurally defaulted, and (3) the errors so infected the entire trial that the resulting conviction violates due process.  *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc).  However, a habeas petitioner may not just complain of unfavorable rulings or events in an effort to cumulate errors.  *Id.* at 1458.  As noted above, Spencer's claim regarding counsel's representation is meritless and does not warrant cumulative-error analysis.  As such, Spencer has presented nothing to cumulate.  *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997).  The entirety of the record compels this court to conclude that counsel was constitutionally effective.  *Cf. Engle v. Isaac*, 456 U.S. 107, 134 (1982) (holding Constitution guarantees criminal defendants only fair trial and competent counsel, not that every conceivable claim will be raised).

## V. SUMMARY

Spencer is lawfully restrained because he has failed to prove that he has been denied a

constitutionally protected interest. Accordingly, the state courts' determination that Spencer was not entitled to relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings filed and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary. RULES GOVERNING SECTION 2254 CASES 8(a).

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the request for habeas corpus relief brought under 28 U.S.C. § 2254.

**Signed this 23rd day of March, 2005.**

**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Under 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  Failure to file written objection to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

12